## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| JANICE MOODY, *on behalf of herself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>NEWREZ LLC d/b/a SHELLPOINT MORTGAGE SERVICING,<br><br>Defendant. | Case No. 1:24-cv-05406-ELR-CMS |

### DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO STRIKE CLASS ALLEGATIONS AND FOR JUDGMENT ON THE PLEADINGS

Dated: May 1, 2025

Respectfully submitted,

/s/ Jennifer R. Burbine

Melissa O. Martinez
Admitted *Pro hac vice*
**McGuireWoods LLP**
500 East Pratt Street, Suite 1000
Baltimore, Maryland 21202-3169
(410) 659-4400
mmartinez@mcguirewoods.com

Brian E. Pumphrey
Admitted *Pro hac vice*
**McGuireWoods LLP**
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
(804) 775-7745
bpumphrey@mcguirewoods.com

Jennifer R. Burbine, Esquire
GA Bar No. 167807
**McGuireWoods LLP**
1075 Peachtree Street, N.E.
35th Floor
Atlanta, GA 30309-3900
(404) 443-5736
jburbine@mcguirewoods.com

*Counsel for Defendant NewRez LLC d/b/a Shellpoint Mortgage Servicing*

i

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ..................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND .............................................1

ARGUMENT ......................................................................................4

I.    THE COURT SHOULD STRIKE THE CLASS ALLEGATIONS. ..............4

    A.    The QWR Class cannot meet the requirements of Rule 23. ................5

    B.    The TILA and Declaratory Judgment Classes are based on
a nonviable claim and therefore should be stricken. ...........................9

II.    THE COURT SHOULD ENTER JUDGMENT FOR SHELLPOINT ON
ALL CLAIMS. ........................................................................10

    A.    The QWR Class RESPA claim (Count I) fails because
it is based on a nonexistent TILA violation. .....................................10

    B.    Plaintiff's TILA claim (Count II) fails as a matter of law
because Shellpoint is not a creditor.....................................................11

    C.    Plaintiff's declaratory judgment claim (Count III) fails
because there is no actual controversy. ...............................................13

    D.    Plaintiff's individual RESPA claim (Count IV) fails
because Plaintiff has no actual damages as a result of
the purported RESPA violation............................................................15

    E.    E..Plaintiff's wrongful attempted foreclosure claim (Count V) fails for
because it is premised on a nonexistent TILA violation and Plaintiff
lacks of damages. ..............................................................................18

CONCLUSION .................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aetna Fin. Co. v. Culpepper*,
171 Ga. App. 315 (1984) ..............................................................18, 19

*Akkus v. Rocket Mortg., LLC*,
715 F. Supp. 3d 726 (D. Md. 2024) ...................................................18

*Aliff v. Bank of Am., N.A.*,
Case No. 3:16-10119, 2017 WL 424878 (S.D. W.Va. Jan. 31,
2017) .........................................................................................13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)......................................................................10

*Baez v. Specialized Loan Servicing LLC*,
709 Fed. Appx. 979 (11th Cir. 2016)..................................................16

*Bates v. JPMorgan Chase Bank, NA*,
768 F.3d 1126 (11th Cir. 2014) .......................................................17

*Best v. NewRez LLC*,
Case No. GJH-19-2331, 2020 WL 5513433 (D. Md. Sept. 11,
2020) .........................................................................................12

*Bevrotte v. Caesars Ent. Corp.*,
Case No. 11-543, 2011 WL 4634174 (E.D. La. Oct. 4, 2011)............................5

*Burkett v. Bank of Am., N.A.*,
Case No. 1:10CV68–HSO–JMR, 2012 WL 3811741 (S.D. Miss.
Sept. 4, 2012) ..............................................................................6

*In re Cahill*,
642 B.R. 813 (Bankr. N.D. Ill. 2022) ................................................14

*Carrier v. Ravi Zacharias Int'l Ministries, Inc.*,
Case No. 1:21-CV-3161-TWT, 2023 WL 2355891 (N.D. Ga.
March 3, 2023)..............................................................................4

*Catalan v. GMAC Mortg. Corp.*,
629 F.3d 676 (7th Cir. 2011) ................................................................7

*Chandler v. Greenlight Fin. Servs.*,
Case No. 2:20-cv-00217, 2021 WL 1202078 (S.D. W.Va. Mar. 30,
2021) ..................................................................................................13

*Chittick v. Freedom Mortg. Corp.*,
Case No. 118CV00275AJTTCB, 2021 WL 5326407 (E.D. Va.
May 7, 2021) ........................................................................................5

*Contos v. Wells Fargo Escrow Co., LLC*,
Case No. C08–838Z, 2010 WL 2679886 (W.D. Wash. July 1,
2010) ....................................................................................................6

*Cornette v. Jenny Garton Ins. Agency, Inc.*,
Case No. 2:10-CV-60, 2010 WL 2196533 (N.D.W. Va. May 27,
2010) ....................................................................................................5

*Fox v. Statebridge Co., LLC*,
629 F. Supp. 3d 300 (D. Md. 2022) ....................................................18

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982) ..............................................................................9

*Grundmeyer v. Allstate Prop. & Cas. Ins. Co.*,
Case No. C15-0464RSL, 2015 WL 9487928 (W.D. Wash. Sept.
29, 2015) ..............................................................................................5

*Hensley v. Bank of N.Y. Mellon*,
Case No. 1:10–CV–1316 AWI SMS, 2011 WL 4084253 (E.D. Cal.
Sept. 13, 2011) ....................................................................................16

*Icarom, PLC v. Howard Cnty., Md.*,
904 F. Supp. 454 (D. Md. 1995) ........................................................14

*Jones v. Hobbs*,
745 F. Supp. 2d 886 (E.D. Ark. 2010), *aff'd sub nom. Williams v.
Hobbs*, 658 F.3d 842 (8th Cir. 2011) ................................................14

*Ka Lok Lau v. Holder*,
880 F. Supp. 2d 276 (D. Mass. 2012) ................................................14

*Kareem v. PHH Mortg. Corp.*,
  Case No. CV 20-7846, 2022 WL 602922 (D.N.J. Mar. 1, 2022).......................18

*Lawther v. Onewest Bank*,
  Case No. C 10–0054RS, 2010 WL 4936797 (N.D. Cal. Nov. 30,
  2010) .........................................................................................................................18

*Lee v. Northland Grp.*,
  Case No. 02 C 6083, 2003 WL 25765398 (N.D. Ill. Apr. 24, 2003) ................11

*Losey v. Warden*,
  521 F. App'x 717 (11th Cir. 2013) ....................................................................10

*Marks v. Ocwen Loan Servicing*,
  Case No. C 07-02133 SI, 2008 WL 344210 (N.D. Cal. Feb. 6,
  2008) ........................................................................................................................13

*McDonald v. OneWest Bank, FSB*,
  929 F. Supp. 2d 1079 (W.D. Wash. 2013) ........................................................17

*McGhee v. Buffalo & Assocs., PLC*,
  922 F. Supp. 2d 674 (E.D. Tenn. 2013).............................................................11

*Morgan v. Caliber Home Loans, Inc.*,
  26 F.4th 643 (4th Cir. 2022) .................................................................................8

*Morgan v. Caliber Home Loans, Inc.*,
  Case No. 8:19-CV-02797-PX, 2022 WL 16964705 (D. Md. Nov.
  16, 2022) ...............................................................................................................7, 9

*Naimoli v. Ocwen Loan Serving, LLC*,
  613 F. Supp. 3d 681 (W.D.N.Y. 2020), *rev'd on other grounds*, 22
  F.4th 376 (2d Cir. 2022) ......................................................................................16

*Naranjo v. Bank of Am.*,
  No. 23-546-KK-ASx, 2024 WL 1651914 (C.D. Cal. Feb. 23, 2024) ...............13

*Neff v. Cap. Acquisitions & Mgmt. Co.*,
  238 F. Supp. 2d 986 (N.D. Ill. 2002), *aff'd*, 352 F.3d 1118 (7th Cir.
  2003) ........................................................................................................................11

*Oginski v. Paragon Props. of Costa Rica, LLC,*
  Case Nos. 10–21720–CIV, 11–60647–CIV, 2011 WL 3489541
  (S.D. Fla. Aug. 9, 2011) ..............................................................4

*Perdum v. Wells Fargo Home Mortg.,*
  Case No. 117CV00972SCJJCF, 2017 WL 8186694 (N.D. Ga. Dec.
  8, 2017) ...................................................................................12

*Phillips v. Ford Motor Co.,*
  435 F.3d 785 (7th Cir. 2006) ........................................................9

*Pilgrim v. Universal Health Card, LLC,*
  660 F.3d 943 (6th Cir. 2011) ........................................................5

*Ploog v. Homeside Lending, Inc.,*
  Case No. 00 C 6391, 2001 WL 987889 (N.D. Ill. Aug. 28, 2001)
  *Report and recommendation adopted,* Case No. 00 C 6391, 2001
  WL 1155288 (N.D. Ill. Sept. 28, 2001) ..................................6, 7, 8, 9

*Renfroe v. Nationstar Mortg.,*
  LLC, 822 F.3d 1241 (11th Cir. 2016)..............................................15

*Sparra v. Deutsche Bank Nat'l Tr. Co.,*
  336 Ga. App. 418 (2016) .............................................................19

*Taylor v. U.S. Bd. of Parole,*
  194 F.2d 882 (D.C. Cir. 1952)......................................................14

*Toldy v. Fifth Third Mortg. Co.,*
  Case No. 1:09 CV 377, 2011 WL 4634154 (N.D. Ohio 2011) ...........6

*Turner v. Beneficial Corp.,*
  242 F.3d 1023 (11th Cir. 2001) (en banc) .....................................16

*Vincent v. The Money Store,*
  736 F.3d 88 (2d Cir. 2013) ..........................................................12

*Wright v. Fam. Dollar, Inc.,*
  Case No. 10 C 4410, 2010 WL 4962838 (N.D. Ill. Nov. 30, 2010)....5

**Statutes**

12 U.S.C. § 2605 ................................................................8, 17

15 U.S.C. § 1602 ....................................................................12

15 U.S.C. § 1638 ......................................................................4

15 U.S.C. § 1640 ....................................................................11

15 U.S.C. § 1692 ....................................................................14

28 U.S.C. § 2201 ......................................................................4

**Other Authorities**

12 C.F.R. § 1024.35 ................................................................3

12 C.F.R. § 1026.41 ................................................................4

Fed. R. Civ. P. 12 ...............................................................5, 10

Fed. R. Civ. P. 23 ............................................................4, 5, 7

## **INTRODUCTION**

Plaintiff seeks to represent three putative classes and brings class claims under three separate federal statutes. All three class claims are predicated on the same underlying conduct – Shellpoint's alleged failure to provide periodic statements for Plaintiff's second mortgage that was discharged in bankruptcy. Of the federal statutes cited, only the Truth in Lending Act ("TILA") imposes an affirmative obligation to provide periodic mortgage statements. However, because mortgage servicers like Shellpoint cannot be liable under TILA, that claim fails as a matter of law. And because Plaintiff's remaining class claims are based on the non-viable TILA violation, those claims fail as well. Even if the claims did not fail, Plaintiff's class claims, particularly the Real Estate Settlement Procedures Act ("RESPA") claim, will require an intense individualized review of each class member's account, and cannot be adjudicated on a class wide basis. Furthermore, Plaintiff's two individual claims fail because she does not allege any damages proximately by the alleged violations. This Court should strike the class allegations and grant Shellpoint judgment on the pleadings as to all claims.

## **FACTUAL AND PROCEDURAL BACKGROUND**[1]

In 1999, Plaintiff Janice Moody purchased her home using "an 80/20

---

[1] The following facts from Plaintiff's Complaint are taken as true for the purposes of this Motion only.

mortgage structure," consisting of both a first and second mortgage. ECF 6 ¶ 44. She refinanced both loans in 2006. *Id.* ¶ 46. Specialized Loan Servicing, LLC ("SLS") serviced the loans from at least 2006 until July 2, 2024.[2]

After facing financial hardship, in 2010, Plaintiff filed for Chapter 7 bankruptcy. *Id.* ¶ 48. During the proceeding, Plaintiff filed a Statement of Intention indicating she would retain her home and continue to make payments on both loans. *Id.* ¶ 49. In August 2010, Plaintiff's second mortgage was discharged and charged off. *Id.* ¶ 50. Following the bankruptcy discharge, Plaintiff alleges that she stopped receiving periodic statements or any communication regarding her second mortgage and assumed that meant the second mortgage had been merged with the first mortgage or forgiven. *Id.* ¶¶ 51-53. In July 2024, Plaintiff received a notice of nonjudicial foreclosure sale regarding the second mortgage from Shellpoint's foreclosure counsel, indicating a September 2024 sale date. *Id.* ¶ 55. The notice stated the house would be sold if Plaintiff did not pay the amount due, including approximately $23,000 in interest that had accrued during the period in which she did not receive statements. *Id.* ¶¶ 55-56.

In response to the foreclosure notice, Plaintiff alleges she sent multiple Qualified Written Requests ("QWR") to Shellpoint disputing the mortgage debt.

---

[2] Shellpoint's ultimate parent company acquired SLS and its portfolio of mortgages in May 2024. For purposes of this Motion, Defendant will refer to only Shellpoint, even if the alleged conduct involved only SLS and occurred prior to the acquisition.

*Id.* ¶¶ 57, 61, 67.  Plaintiff's first QWR stated that Plaintiff had not received any monthly statements since her bankruptcy discharge and asked Shellpoint to investigate and explain the assessment of interest during that period.  *Id.* ¶ 59.  The QWR also requested various documents, like servicing notes and the loan account history.  *Id.* ¶ 60.  Plaintiff alleges that Shellpoint responded that the QWR lacked sufficient information to allow it to conduct an investigation, and that Shellpoint refused to provide certain requested documents.  *Id.* ¶¶ 62, 66.

Plaintiff then sent a follow-up QWR, once again asking Shellpoint to investigate the assessment of interest and fees during the period no statements were sent.  *Id.* ¶ 68.  Shellpoint responded that billing statements were discontinued following Plaintiff's bankruptcy discharge, and that Plaintiff was still required to pay the stated amount due on the second mortgage, including $21,478.10 in interest, or foreclosure would proceed.  *Id.* ¶¶ 72, 73.

Plaintiff alleges that, as a result of Shellpoint's conduct, she has lost equity in her home in the amount approaching $25,000 and has suffered significant emotional distress from the fear of losing her home.  *Id.* ¶ 74.

On November 22, 2024, Plaintiff filed a putative class action lawsuit against Shellpoint.  ECF 1.  On December 19, 2024, Plaintiff filed an Amended Complaint. ECF 6.  The Amended Complaint raises five causes of action: Count I: Violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e)(2), 12

C.F.R. § 1024.35(e) on behalf of the putative QWR Class; Count II: Violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1638(f), 12 C.F.R. § 1026.41(a)(2) on behalf of the putative TILA Class; Count III: Request for a Declaratory Judgment, 28 U.S.C. § 2201 on behalf of the putative Declaratory Judgment Class; Count IV: Violation of RESPA on behalf of Plaintiff individually; and Count V: Wrongful Attempted Foreclosure on behalf of Plaintiff individually.

On January 27, 2025, Shellpoint answered the Amended Complaint. ECF 7. Shellpoint now moves for judgment on the pleadings on all claims.

## **ARGUMENT**

## I.    **THE COURT SHOULD STRIKE THE CLASS ALLEGATIONS.**

"At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). The Court may strike or dismiss class allegations when "a defendant demonstrates from the face of the complaint that it will be impossible to certify the class[] alleged by the plaintiff regardless of the facts the plaintiff may be able to prove." *Carrier v. Ravi Zacharias Int'l Ministries*, *Inc.*, Case No. 1:21-CV-3161-TWT, 2023 WL 2355891, at *2 (N.D. Ga. March 3, 2023) (alternation in original) (quoting *Oginski v. Paragon Props. of Costa Rica, LLC*, Case Nos. 10–21720–CIV, 11–60647–CIV, 2011 WL 3489541, at *3 (S.D. Fla. Aug. 9, 2011)). The Court has the authority to do so pursuant to Rule 23(d)(1)(D),

which allows the Court to issue orders "requir[ing] that the pleadings be amended to eliminate allegations about representation of absent persons[,]" or Rule 12(f), which allows the Court to strike from a pleading any matter deemed "redundant, immaterial, impertinent, or scandalous[.]" Courts nationwide eliminate putative class claims when it appears from the face of the complaint that plaintiffs cannot establish the minimum facts necessary to satisfy Rules 23(a) and (b). *See, e.g.*, *Grundmeyer v. Allstate Prop. & Cas. Ins. Co.*, Case No. C15-0464RSL, 2015 WL 9487928, at \*2-3 (W.D. Wash. Sept. 29, 2015); *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011); *Bevrotte v. Caesars Ent. Corp.*, Case No. 11-543, 2011 WL 4634174, at \*1 (E.D. La. Oct. 4, 2011); *Wright v. Fam. Dollar, Inc.*, Case No. 10 C 4410, 2010 WL 4962838, at \*1 (N.D. Ill. Nov. 30, 2010); *Cornette v. Jenny Garton Ins. Agency, Inc.*, Case No. 2:10-CV-60, 2010 WL 2196533, at \*2 (N.D.W. Va. May 27, 2010).

### A.    The QWR Class cannot meet the requirements of Rule 23.

The QWR Class cannot meet the criteria for class certification, and the RESPA claim cannot be adjudicated on a class wide basis. "[A]s courts have consistently recognized with respect to these or other similar issues under RESPA or other statutes, in order to determine whether liability exists, an individualized assessment of each loan is necessary." *Chittick v. Freedom Mortg. Corp.*, Case No.

118CV00275AJTTCB, 2021 WL 5326407, at *10 (E.D. Va. May 7, 2021) (denying class certification on RESPA claim).[3]

*Ploog v. Homeside Lending, Inc.*, Case No. 00 C 6391, 2001 WL 987889 (N.D. Ill. Aug. 28, 2001), is instructive.[4]  The *Ploog* court denied certification of a class of "all persons who made a 'qualified written request' to HomeSide Lending, Inc. and with respect to whom HomeSide failed to respond in writing as required by 12 U.S.C. § 2605(e)(2) [or] failed to take corrective action in violation of 12 U.S.C. § 2605(e)(2)" – the same provision at issue here.  *Id.* at *5 (cleaned up). The court explained:

> The content of a qualified written request by definition must contain its own unique facts – e.g., the borrower's name, account number, and problematic situation. *See* 12 U.S.C. § 2605(e)(1)(B). Since the unique facts of a qualified written request trigger a servicer's response, a response too, by definition, must contain its own set of unique facts – namely, the information that the borrower needs.

---

[3] *See also Toldy v. Fifth Third Mortg. Co.*, Case No. 1:09 CV 377, 2011 WL 4634154, at *3 (N.D. Ohio 2011) (denying class certification on RESPA claim because the question of "whether a putative class member's loan garners RESPA coverage" could not be determined short of a "case by case analysis"); *Contos v. Wells Fargo Escrow Co., LLC*, Case No. C08–838Z, 2010 WL 2679886, at *7 (W.D. Wash. 2010) (denying class certification of RESPA claim because the court would need to "undertake individualized factual inquiries" with regard to each plaintiff); *cf. Burkett v. Bank of Am., N.A.*, Case No. 1:10CV68–HSO–JMR, 2012 WL 3811741, at *8 (S.D. Miss. Sept. 4, 2012) ("The Court notes that Plaintiffs have not cited a single case where RESPA or TILA claims have been certified for class treatment.").

[4] *Report and recommendation adopted*, Case No. 00 C 6391, 2001 WL 1155288 (N.D. Ill. Sept. 28, 2001).

*Id.* at *11.  Indeed, "the district court would not be looking over standard forms with checked boxes; rather, it would be parsing hand or typewritten documents sometimes less than artfully drafted.  It is highly likely that reasonable minds would differ as to what the documents contain."  *Id.* at *14.

The court would then need to repeat this analysis for each class member.  *See Morgan v. Caliber Home Loans, Inc.*, Case No. 8:19-CV-02797-PX, 2022 WL 16964705, at *3 (D. Md. Nov. 16, 2022) ("Whether the customer correspondence qualifies as a QWR—namely, whether it concerns a dispute over servicing of loan payments; articulates a 'statement of reasons' for the belief that the account is in error; and 'enables the servicer to identify' the account—requires individual examination of each correspondence.").  "When documents must be examined and debated one at a time in connection with each and every proposed class member to establish the defendant's liability to any proposed class member, individual questions predominate and the economical benefits of the class action device cannot be achieved . . . . Individual issues predominate, thus making the class action device an inappropriate method of dispute resolution."  *Ploog*, 2001 WL 987889, at *14.

The same Rule 23 problems are present here. First, the Court will need to determine whether each borrower's correspondence meets the statutory definition of a qualified written request (or QWR).  *See Catalan v. GMAC Mortg. Corp.*, 629 F.3d

676, 680 (7th Cir. 2011) (only a QWR will "trigger the loan servicer's duties under RESPA to acknowledge and respond").[5]

This QWR inquiry alone is sufficient to make a Section 2605(e)(2) class unworkable. But once a certain borrower's correspondence is determined to be a QWR, the next step, ensuring the servicer complied, is impossible to determine on a class wide basis. Upon receiving a QWR, a mortgage servicer can comply with Section 2605(e)(2) in three ways: by (A) making "appropriate corrections in the account of the borrower," (B) conducting an investigation and providing "a statement of reasons for which the servicer believes the account of the borrower is correct," or (C) providing "information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer[.]" *Id.* § 2605(e)(2). "Conceivably, § 2605(e)(2)(A), § 2605(e)(2)(B), or § 2605(e)(2)(C) could be violated differently . . . create[ing] a degree of variance among the proposed class members." *Ploog*, 2001 WL 987889, at *11. "Similar to the qualified written request inquiry, the response inquiry will likely entail a document-by-document examination and debate." *Id.* at *14.

---

[5] "To qualify as a QWR, a document must be a 'written correspondence' that contains either (1) a 'statement of the reasons' for the borrower's belief the account is in error or (2) 'sufficient detail' regarding the information requested by the borrower." *Morgan v. Caliber Home Loans, Inc.*, 26 F.4th 643, 649 (4th Cir. 2022) (quoting 12 U.S.C. § 2605(e)(1)).

The QWR Class cannot meet the requirements for class certification for the same reasons in *Ploog* and *Morgan*. The Court would be required to review each individual class members' correspondence to Shellpoint to determine whether it constitutes a QWR, then review each individual response from Shellpoint to determine RESPA compliance. And here, the QWR Class requires an extra layer of review. The Court will also need to verify that each qualifying QWR "disputed SLS's assessment of interest or other fees." ECF 6 ¶ 75. The Court should strike the QWR Class because it cannot meet the requirements for class certification.

**B.    The TILA and Declaratory Judgment Classes are based on a nonviable claim and therefore should be stricken.**

As explained below, Plaintiff's underlying TILA and Declaratory Judgment claims fail as a matter of law; therefore, the classes based on those claims cannot be certified and should be stricken. *See* Argument § II.A & II.B *infra*. "Strictly speaking, if no motion to certify has been filed (perhaps if it has been filed but not acted on), the case is not yet a class action and so a dismissal of the named plaintiffs' claims should end the case." *Phillips v. Ford Motor Co.*, 435 F.3d 785, 787 (7th Cir. 2006); *cf. Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) ("[A] class representative must be part of the class and possess the same interest and ***suffer the same injury*** as the class members.'") (emphasis added). Because the classes are not yet certified and Plaintiff has not alleged a cognizable injury, the TILA and Declaratory Judgment Classes are unsustainable and should be stricken.

9

## II.    THE COURT SHOULD ENTER JUDGMENT FOR SHELLPOINT ON ALL CLAIMS.

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  In evaluating the sufficiency of a complaint, courts in the Eleventh Circuit apply the same pleading standard for Rule 12(c) motions as they do for Rule 12(b)(6) motions.  *See Losey v. Warden*, 521 F. App'x 717, 719 (11th Cir. 2013) (per curiam).  To survive a motion for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

### A.    The QWR Class RESPA claim (Count I) fails because it is based on a nonexistent TILA violation.

The class RESPA claim fails because it is entirely predicated on a nonexistent TILA violation.  Plaintiff alleges that Shellpoint violated RESPA by refusing to remove interest and fees that "were not permissible because the consumers were not receiving monthly statements."  ECF 6 ¶¶ 83-84.  However, RESPA does not place an affirmative obligation on mortgage servicers to provide monthly statements; that obligation comes from TILA and TILA only.  In other words, Plaintiff alleges that

10

Shellpoint violated RESPA because it violated TILA, which Shellpoint cannot do by law, and Shellpoint is entitled to judgment on the class RESPA claim.[6]

## B. Plaintiff's TILA claim (Count II) fails as a matter of law because Shellpoint is not a creditor.

Plaintiff's TILA claim fails as a matter of law because the statute is directed towards creditors, which Shellpoint is not. TILA provides a private right of action for damages against "any *creditor* who fails to comply with any requirement imposed under [TILA]." 15 U.S.C. § 1640(a) (emphasis added). A creditor:

> (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and

> (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.

---

[6] Courts have routinely rejected such similar attempts to enforce a barred TILA claim through other statutes. *See Neff v. Cap. Acquisitions & Mgmt. Co.*, 238 F. Supp. 2d 986, 993 (N.D. Ill. 2002), *aff'd*, 352 F.3d 1118 (7th Cir. 2003) ("[T]he [Fair Debt Collection Practices Act] does not place an affirmative obligation on a debt collector to, for example, send monthly statements. Because there is no affirmative obligation under the FDCPA to send monthly statements, and Neff does not allege deceptive or unfair practices independent of defendants' alleged TILA obligations, counts III and IV fail to state a claim upon which relief can be granted and therefore are dismissed."); *Lee v. Northland Grp.*, Case No. 02 C 6083, 2003 WL 25765398, at *1 (N.D. Ill. Apr. 24, 2003) ("Lee's FDCPA and [Illinois Consumer Fraud Act] claims are entirely predicated on her nonexistent TILA violation, and thus those claims must also be dismissed."); *McGhee v. Buffalo & Assocs., PLC*, 922 F. Supp. 2d 674, 679 (E.D. Tenn. 2013) (dismissing FDCPA claim because failure to send periodic statements in violation of TILA is not actionable under FDCPA).

11

15 U.S.C. § 1602(f). "This definition is restrictive and precise, referring only to a person who satisfies both requirements of the provision." *Vincent v. The Money Store*, 736 F.3d 88, 105 (2d Cir. 2013) (internal quotations and citations omitted) (emphasis removed). "TILA establishes a straightforward, objective inquiry for determining the identity of the creditor: it is 'the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness.'" *Id.* at 106 (a defendant could not be held liable under TILA because it did not originate the loan at issue).

It is well-settled that mortgage servicers that do not also own the loan are not "creditors," and therefore, cannot be liable under TILA. For example, in *Best v. NewRez LLC*, the plaintiff sued NewRez (which does business as Shellpoint) under various federal statutes, including TILA. Case No. GJH-19-2331, 2020 WL 5513433, at *30 (D. Md. Sept. 11, 2020). The court first noted that the plaintiff did not plausibly allege that Shellpoint owned the plaintiff's loan at any time; Shellpoint merely serviced the loan. *Id.* The court then explained that "a servicer cannot be held liable for breaching the obligation at § 1641(f)(2) because TILA only imposes liability on creditors and their assignees." *Id.* at *31. Accordingly, the court dismissed the TILA claim. *Id.*

Courts nationwide are in accord. *See Perdum v. Wells Fargo Home Mortg.*, Case No. 117CV00972SCJJCF, 2017 WL 8186694, at *18 (N.D. Ga. Dec. 8, 2017)

("Because Plaintiff alleges that Wells Fargo is the servicer of her loan, she has failed to state a claim for relief under § 1641(f)(2)."); *Naranjo v. Bank of Am.*, No. 23-546-KK-ASx, 2024 WL 1651914, at *4 (C.D. Cal. Feb. 23, 2024) ("[A] servicer cannot be held liable under TILA unless the servicer also owns the subject loan."); *Marks v. Ocwen Loan Servicing*, Case No. C 07-02133 SI, 2008 WL 344210, at *2 (N.D. Cal. Feb. 6, 2008) ("[L]oan servicers are not liable under TILA . . . unless the loan servicer owned the loan obligation at some point[.]") (citing 15 U.S.C. § 1641(f)); *Chandler v. Greenlight Fin. Servs.*, Case No. 2:20-cv-00217, 2021 WL 1202078, at *17 (S.D. W.Va. Mar. 30, 2021) ("[A]s this court has observed, 'courts . . . have unanimously found that the section does not impose civil liability on servicers.'") (alterations in original) (quoting *Aliff v. Bank of Am., N.A.*, Case No. 3:16-10119, 2017 WL 424878, at *3 (S.D. W.Va. Jan. 31, 2017)) (collecting cases) (citation omitted).

Here, as Plaintiff acknowledges, Shellpoint is merely the servicer of her loan, not the owner. *See* ECF 6 ¶ 47. Shellpoint is not a creditor and cannot be liable under TILA. Shellpoint is entitled to judgment on Plaintiff's TILA claim.

### C. Plaintiff's declaratory judgment claim (Count III) fails because there is no actual controversy.

Because there is no cognizable claim for a violation of TILA, there is no "actual controversy" between the parties, and thus, Plaintiff's declaratory judgment

claim fails.[7]  "Federal courts are authorized to issue declaratory judgments only in cases of actual controversy."  *Icarom, PLC v. Howard Cnty.*, Md., 904 F. Supp. 454, 457 (D. Md. 1995) (citing 28 U.S.C. § 2201(a) (1988)).  When a complaint "seeks a declaratory judgment concerning matters which do not present an actual controversy it clearly fails to state a cause of action."  *Taylor v. U.S. Bd. of Parole*, 194 F.2d 882, 883 (D.C. Cir. 1952).  When there is no case or controversy, any declaration of rights would amount to an "impermissible advisory opinion."  *See In re Cahill*, 642 B.R. 813, 824 (Bankr. N.D. Ill. 2022); *Ka Lok Lau v. Holder*, 880 F. Supp. 2d 276, 282 (D. Mass. 2012) ("[T]here is no real and substantial controversy, which is a necessity for declaratory judgment. The court, therefore, sees no way to view the desired declaratory relief as anything other than an advisory opinion.").

Furthermore, "the Declaratory Judgment Act does not authorize actions to decide whether federal statutes have been or will be violated when no private right of action to enforce the statutes has been created by Congress."  *Jones v. Hobbs*, 745 F. Supp. 2d 886, 893 (E.D. Ark. 2010), *aff'd sub nom. Williams v. Hobbs*, 658 F.3d 842 (8th Cir. 2011).  "To entertain, under the auspices of the Declaratory Judgment Act, a cause of action brought by private parties seeking a declaration that [a statute]

---

[7] Plaintiff alleges that she and the class members are subject to ongoing harm, including "abusive collection practices."  ECF 1 at ¶ 103    This claim sounds in a FDCPA claim (15 U.S.C. § 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors…")), and it is well-established that the FDCPA cannot be used to enforce TILA violations.  *See supra* n.7.

has been violated would, in effect, evade the intent of Congress not to create private rights of action under those statutes and would circumvent the discretion entrusted to the executive branch in deciding how and when to enforce those statutes." *Id.* (rejecting a plaintiff's attempt to "seek private enforcement of [] statutes by means of a declaratory judgment.").

Here, Plaintiff seeks a declaration that, because Shellpoint purportedly failed to provide statements, Shellpoint has waived the fees and interest assessed to Plaintiff's loan during the period which statements were not sent. *See* ECF 1 at ¶ 106. But because there is no actionable TILA claim against Shellpoint, there is no actual controversy. Granting the requested declaration based on Shellpoint's non-violation of TILA would amount to an impermissible advisory opinion and potentially provide Plaintiff relief on a claim for which Congress intentionally has not created a private right of action. Shellpoint is entitled to judgment on Count III.

### D. Plaintiff's individual RESPA claim (Count IV) fails because Plaintiff has no actual damages as a result of the purported RESPA violation.

Plaintiff fails to allege that she suffered any damages because of Shellpoint's RESPA violation. "[T]o prevail on a RESPA claim, a plaintiff must show (1) a failure to comply with a RESPA obligation and (2) actual damages sustained as a result of the failure to comply." *Renfroe v. Nationstar Mortg.*, LLC, 822 F.3d 1241, 1244 (11th Cir. 2016). "For actual damages to be 'a result of' a servicer's

noncompliance, the 'plaintiff must present evidence to establish a causal link between the [servicer's] noncompliance and [her] damages." *Baez v. Specialized Loan Servicing LLC*, 709 Fed. Appx. 979, 982 (11th Cir. 2016) (alterations in original) (quoting *Turner v. Beneficial Corp.*, 242 F.3d 1023, 1027–28 (11th Cir. 2001) (en banc)). While courts "have interpreted this requirement liberally . . . the loss alleged must be related to the RESPA violation itself." *Hensley v. Bank of N.Y. Mellon,* Case No. 1:10–CV–1316 AWI SMS, 2011 WL 4084253, at *3–4 (E.D. Cal. Sept. 13, 2011) (internal quotation marks and citations omitted). The Eleventh Circuit "ha[s] recognized that a plaintiff could potentially prove actual damages for purposes of RESPA by showing that the servicer's deficient response 'prevented her from taking some important action.'" *Baez*, 709 Fed. Appx. at 984 (quoting *Bates v. JPMorgan Chase Bank, NA*, 768 F.3d 1126, 1135 (11th Cir. 2014). Furthermore, "damages that occurred before the alleged RESPA violations . . . could not have been proximately caused by the violations." *Naimoli v. Ocwen Loan Serving, LLC*, 613 F. Supp. 3d 681, 699 (W.D.N.Y. 2020), *rev'd on other grounds*, 22 F.4th 376 (2d Cir. 2022).

Here, Plaintiff alleges that Shellpoint "fail[ed] to provide Plaintiff with most of the information she requested or to explain why the requested information was

unavailable,"[8] and that she suffered "informational injury and emotional distress, including aggravation and distress from the threatened loss of her family home to foreclosure and the lost equity in her home." ECF 6 ¶¶ 113, 115. However, Plaintiff fails to plausibly allege that those damages were suffered "as *a result of* the [RESPA] failure." *See* 12 U.S.C. § 2605(f)(1)(A) (emphasis added). Plaintiff does not allege that Shellpoint's failure to provide servicing notes and a complete loan history prevented her from taking some important action. *See Bates*, 768 F.3d at 1135 ("[Bates] has not explained why her lack of knowing *why* she received the check in March somehow caused her additional damages or prevented her from taking some important action.").

Had Plaintiff received the documents she requested, none of her alleged damages would have been prevented. Receipt of documents would not have erased the allegedly inflated interest charges from her account, or prevented them from being imposed, as she was already in default and they were already assessed by the time Plaintiff sent her correspondence. *See McDonald v. OneWest Bank, FSB*, 929 F. Supp. 2d 1079, 1096 (W.D. Wash. 2013) ("The lack of information did not cause plaintiff to send his payments to the wrong entity, for example, or result in the

---

[8] In contrast to the QWR Class RESPA claim based on violations of 12 U.S.C. § 2605(e)(2)(A)-(B), Plaintiff's individual RESPA claim is based on a violation of 12 U.S.C. § 2605(e)(2)(C).

accrual of late fees or penalties that could have been avoided had defendants timely responded: plaintiff was already in default when the QWR was sent.").

And, "[a]s for the alleged emotional damages, they cannot, on their own, establish actual damages." *Akkus v. Rocket Mortg., LLC*, 715 F. Supp. 3d 726, 735 (D. Md. 2024); *Fox v. Statebridge Co., LLC*, 629 F. Supp. 3d 300, 310 (D. Md. 2022); *Kareem v. PHH Mortg. Corp.*, Case No. CV 20-7846 (RBK/MJS), 2022 WL 602922, at *6 (D.N.J. Mar. 1, 2022).

Further, it "remains unexplained . . . how the QWR failure itself is causally connected to the claimed distress of [Plaintiff]." *See Lawther v. Onewest Bank,* Case No. C 10–0054RS, 2010 WL 4936797 at *7 (N.D. Cal. Nov. 30, 2010) (dismissing RESPA claim for lack of damages). Plaintiff's damages cannot form the basis of her individual RESPA claim, and Shellpoint is entitled to judgment on Count IV.

**E.  Plaintiff's wrongful attempted foreclosure claim (Count V) fails because it is premised on a nonexistent TILA violation and Plaintiff lacks damages.**

Like all her claims before it, Plaintiff's wrongful attempted foreclosure claim relies on the same nonexistent TILA violation, so the claim fails. But even if the claim did not fail on that basis, Plaintiff does not allege actual damages sustained from the wrongful attempted foreclosure, thus dooming her claim. Wrongful attempted foreclosure requires "a knowing and intentional publication of untrue and derogatory information concerning the debtor's financial condition, ***and*** that

18

damages were sustained as a direct result of this publication." *Aetna Fin. Co. v. Culpepper*, 171 Ga. App. 315, 319 (1984) (emphasis added).  Here, Plaintiff only alleges that the yet-to-occur "scheduled foreclosure sale poses a risk of imminent, irreparable harm to Plaintiff, as it would result in the loss of her home."  ECF 6 ¶ 126.  Despite her alleged fear of possible future damages, Plaintiff does not allege any damages that were actually "sustained as a direct result of th[e] publication." *See Sparra v. Deutsche Bank Nat'l Tr. Co.*, 336 Ga. App. 418, 421 (2016) ("Sparra also does not allege any damages as a result of the foreclosure publication for which he could recover, rendering this claim without merit.") (emphasis added). Shellpoint is entitled to judgment on Plaintiff's wrongful attempted foreclosure claim.

## CONCLUSION

WHEREFORE, Defendant NewRez LLC d/b/a Shellpoint Mortgage Servicing respectfully requests that the Court grant its Motion to Strike Class Allegations and for Judgment on the Pleadings.


[*signatures on following page*]

19

Dated:  May 1, 2025                         Respectfully submitted,

                                            */s/ Jennifer R. Burbine*
                                            Jennifer R. Burbine, Esquire
                                            GA Bar No. 167807
                                            **MCGUIREWOODS LLP**
                                            1075 Peachtree Street, N.E.
                                            35th Floor
                                            Atlanta, GA 30309-3900
                                            (404) 443-5736
                                            (404) 443-5798 (Facsimile)
                                            jburbine@mcguirewoods.com

                                            Melissa O. Martinez
                                            Admitted *Pro hac vice*
                                            **MCGUIREWOODS LLP**
                                            500 East Pratt Street, Suite 1000
                                            Baltimore, Maryland 21202-3169
                                            (410) 659-4400
                                            (410) 659-4482 Fax
                                            mmartinez@mcguirewoods.com

                                            Brian E. Pumphrey
                                            Admitted *Pro hac vice*
                                            **MCGUIREWOODS LLP**
                                            Gateway Plaza
                                            800 East Canal Street
                                            Richmond, VA 23219
                                            (804) 775-7745
                                            (804) 698-2018 Fax
                                            bpumphrey@mcguirewoods.com

                                            ***Counsel for Defendant NewRez LLC***
                                            ***d/b/a Shellpoint Mortgage Servicing***